**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| JEFFREY L. BUCKNER, <br><br> *Plaintiff,* <br><br> v. <br><br> LYNCHBURG REDEVELOPMENT & HOUSING AUTHORITY, <br><br> *Defendant.* | CASE NO. 6:16-CV-00070 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

Plaintiff Jeffrey Buckner brings a failure to hire claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA") against Defendant Lynchburg Redevelopment and Housing Authority. Plaintiff alleges that Defendant discriminatorily hired a younger mechanic instead of himself, despite the fact that he had more relevant skills and experience than the younger candidate. Defendant argues that Plaintiff was overqualified for the position at issue, which was essentially unskilled manual labor. Defendant seeks summary judgment on Plaintiff's failure to hire claim on the ground that Plaintiff's overqualification was a legitimate reason not to hire him.

The Court will grant Defendant's motion for summary judgment. Defendant has presented evidence supporting its legitimate overqualification rationale for not hiring Plaintiff – namely, that he would not have been happy in the role and he would have cost too much. Plaintiff has not met his burden of demonstrating that Defendant's proffered reasons were pretextual. Further, even if Plaintiff were successful in demonstrating pretext, there is insufficient evidence in the record to permit a reasonable trier of fact to conclude that age discrimination was the "but-for" reason for Defendant's failure to hire Plaintiff.

1

I. Facts

Defendant Lynchburg Redevelopment and Housing Authority is a political subdivision of the Commonwealth of Virginia that owns and operates several low income housing properties. (Dkt. 28-2 ¶2). Plaintiff worked for Defendant for a number of years tending to the maintenance needs of Defendant's properties. (*See* dkts. 28-7; 28-13).

In December 2013, Defendant terminated Plaintiff's employment for budgetary reasons. (Dkt. 28-4 ¶¶ 6, 7).[1] Defendant had decided to eliminate one Mechanic II position, and Plaintiff was let go because he was the lowest rated of the three Mechanic IIs. (Dkts. 28-4 ¶6, 28-5 ¶1-2). A Mechanic II is a skilled position that requires working independently, while a Mechanic I generally serves more as manual labor and often works as a helper for a Mechanic II. (Dkts. 28-5 ¶ 5, 28-19 at 19, 28-4 ¶ 16; 29-4 at 44). One of the factors that made Plaintiff the lowest rated Mechanic II was his comparably weaker HVAC skills. (Dkt. 32-3 at 19, 21, 23). Employees of Defendant provided Plaintiff with two positive letters of recommendation following his termination. (*See* dkts. 28-7, 28-8).

In September 2014, a Mechanic I working for Defendant resigned, and Defendant decided to fill that vacant position. (Dkt. 28-4 ¶10). Maintenance Manager Loren McGarrahan, age 61, advertised the vacant position as "entry level" and "semi-skilled" and that its salary would be "commensurate with experience." (Dkts. 28-1; 28-5 ¶ 5). McGarrahan was seeking to hire someone with compensation in the range of $10-12 per hour. (Dkt. 28-5 ¶ 5).

Plaintiff, 52 at the time, applied for the Mechanic I position on October 10, 2014. (Dkt. 28-8 ¶¶ 36-37). In his application, he highlighted his "20 years' experience" and training and

---

[1] Plaintiff originally brought a wrongful termination claim, but it was untimely and was voluntarily dismissed. (*See* dkt. 18).

certificates that he had received that were relevant to the position. (Dkt. 28-13). McGarrahan saw Plaintiff's application and concluded he was overqualified for the position. (Dkt. 28-5 ¶ 8). McGarrahan was aware that Plaintiff made $17.43 per hour working for Defendant as a Mechanic II prior to his termination. (*Id.*) The decision was also based on the belief that Plaintiff would have been unhappy in the Mechanic I role because of his extensive experience in more skilled positions. (Dkt. 29-3 at 28). McGarrahan informed Executive Director Dawn Fagan of his assessment, and Fagan agreed. (Dkt. 28-5 ¶ 8.) Plaintiff was not hired for the position.

Prior to Plaintiff's application, Clyde Dixon — Plaintiff's former colleague as a Mechanic II — spoke to maintenance foreman Keith Jackson about the possibility of hiring back Plaintiff. (Dkt. 28-18 at 28). According to Dixon, "[Jackson] said they may want someone younger. They put it up there (the position) as an entry level person." (Dkt. 28-2 at 2). It is undisputed that Jackson was not in a position to make the hiring decision for the Mechanic I vacancy. (*See* dkts. 28-5 ¶ 7; 28-19 at 12). Instead, McGarrahan was the primary decisionmaker on hiring, although he also needed financial approval from his supervisor, Executive Director Fagan, and Assistant Director Bill Canfield. (*Id.*; dkt. 32-3 at 15, 30).[2] Jackson denies ever making the alleged statement to Dixon. (Dkt. 28-6 ¶5).

On September 25, 2014 Will Suddith (36 at the time) applied for the Mechanic I position. (Dkt. 29-11).[3] He was hired for the position in November 2014. (Dkt. 28-4 ¶ 12). Suddith had

---

[2] McGarrahan had the necessary building and maintenance experience to evaluate the qualifications of candidates for the Mechanic I position. (Dkts. 29-4 at 31; 29-3 at 28–30). Fagan, without any such experience, essentially delegated the hiring decision to McGarrahan. (*Id.*)

[3] The record merely reflects that Suddith was "younger" (*see* dkt. 29-2 ¶ 18) than Plaintiff, but did not state his exact age. Defense counsel stipulated at oral argument that Suddith was 36 at the time.

3

some experience working in the HVAC field, primarily as a manual laborer. (Dkt. 32-3 at 29). Suddith made $10.60 an hour when he left this HVAC position. (Dkt. 28-4 at ECF 7). Suddith did not have any relevant certifications, nor did he have a high school diploma or GED. (Dkt. 29-11). Maintenance foreman Keith Jackson knew Suddith personally and recommended him to McGarrahan for the job. (Dkts. 28-6 ¶3, 28-5 ¶ 6). McGarrahan interviewed Suddith, determined he was qualified for the position, and hired him at $12.01 per hour with approval of Fagan in November 2014. (Dkts. 28-5 ¶7, 28-4 ¶12).

Plaintiff filed a charge of age discrimination with the EEOC on March 25, 2015. (Dkt. 28-3). The EEOC was made aware of much of the relevant evidence before the Court, including Mr. Jackson's alleged statement, yet still concluded that the evidence failed to support age discrimination because it indicated that Plaintiff was overqualified for the entry level position. (Dkts. 28-2, 28-16).

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In

considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

### III. Discussion

The standard for proving age discrimination is "high," in that a plaintiff must prove the discrimination was "the but-for cause" of his failure to be hired. *Arthur v. Pet Dairy*, 593 F. App'x 211, 219–21 (4th Cir. 2015); *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 251 n.13 (4th Cir. 2015) (citing *Arthur* for the proposition that "a plaintiff who makes out a prima facie case of ADEA discrimination must still prove that 'his age was the but-for cause of his termination'"); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009) (describing but-for standard). In other words, that causal relationship exists if the defendant's discriminatory animus was a "necessary logical condition" for the adverse action taken and that the defendant did not act "because" of some other, legitimate motivation. *Gross,* 557 U.S. at 176. However, discrimination "need not be the sole cause of the adverse employment action" in order to be unlawful under the ADEA. *Arthur*, 593 F. App'x at 220. Rather, the inquiry is whether discriminatory reasons "animate[d]" or "played a role in . . . and had a determinative influence on" the employment decision. *Arthur*, 593 F. App'x at 220; *Gross*, 557 U.S. at 176

"Evidence of but-for causation may be direct or circumstantial." *Ramos v. Molina Healthcare, Inc.*, 603 F. App'x 173, 179 (4th Cir. 2015) (citing *Gross*, 557 U.S. at 177–78). However, "direct evidence of age discrimination may not always be sufficient to create a question of fact for trial in the ADEA context." *Arthur*, 593 F. App'x at 221 (quoting *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 531–32 (6th Cir. 2014)). Instead, considering both

circumstantial and direct evidence the "focus is on whether the plaintiff has provided sufficient evidence to cast doubt upon the employer's stated reasons for the employment action, such that a reasonable juror may find age was the determinative factor in that decision." *Arthur*. 593 F. App'x at 221.

### a. *McDonnell Douglas* Framework

#### i. Prima Facie Case

Parties attempting to prove age discrimination may proceed under the pretext framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] Under this framework, Plaintiff must first establish a prima facie case of Defendant's discriminatory failure to hire. "To establish such a prima facie case, a plaintiff must demonstrate that: (1) he was a member of a protected class, *i.e.,* that he was at least 40 years old; (2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA." *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). At oral argument, the parties agreed that Plaintiff has made out a prima facie case, and the Court concurs. Further, the primary issue of whether Plaintiff was "overqualified" is best addressed under the framework of Defendant's legitimate reasons for not hiring him and whether they were pretextual. *See Sembos v. Philips Components*, 376 F.3d 696, 701 (7th Cir. 2004) ("Although that means Sembos was qualified for purposes of the prima facie

---

[4] Here, Plaintiff has elected to proceed under the *McDonnell Douglas* burden shifting framework rather than through direct evidence of discrimination. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) ("Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional sex or age discrimination through two avenues of proof.").

case, once the burden shifts to Philips, Sembos' over-qualification constitutes a legitimate, non-discriminatory reason for rejecting him for the open positions.").

### ii. Legitimate, Non-Discriminatory Reasons

Once the plaintiff has established the prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). Defendant's stated reason for failing to hire Plaintiff is that he was "overqualified." (Dkt. 28 at 8; *see also* dkts. 28-3 ¶ 11; 28-4 ¶ 8). Although not yet addressed by the Fourth Circuit, several circuits have accepted overqualification as a legitimate reason to not hire an older worker under the ADEA. *See E.E.O.C. v. Ins. Co. of N. Am.*, 49 F.3d 1418, 1420 (9th Cir. 1995) ("[I]f ICNA's rejection of Pugh was truly based on its belief that he was overqualified for the position at issue, ICNA did not violate the ADEA."); *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 192–93 (2d Cir. 1991) ("The ADEA does not forbid employers from adopting policies against "underemploying" persons in certain positions so long as those policies are adopted in good faith and are applied evenhandedly."); *Sembos*, 376 F.3d at 701 (7th Cir. 2004) ("[The defendant/employer] was nonetheless entitled to summary judgment because [the plaintiff] was overqualified for the job.").

However, stating that someone is "overqualified" on its own lacks sufficient meaning to be a legitimate reason for not hiring an individual. It is like saying someone is a bad "fit" for a job — even if true, it requires further explanation. Accordingly, courts addressing overqualification have consistently held that there must be some objective reason why the

7

excessive qualifications are a negative trait.[5] Examples of such objective reasons include higher salaries, job dissatisfaction, overanalyzing problems, and the likelihood that the applicant will quickly move on to a different job that better meets their qualifications.[6] Without these more objective reasons, "overqualified" could easily be used as a meaningless label to discriminate against individuals on the basis of their age. *See Taggart v. Time Inc.*, 924 F.2d 43, 47–48 (2d Cir. 1991) ("Denying employment to an older job applicant because he or she has too much experience, training or education is simply to employ a euphemism to mask the real reason for refusal, namely, in the eyes of the employer the applicant is too old."); *Stein v. Nat'l City Bank*, 942 F.2d 1062, 1065–66 (6th Cir. 1991).

Here, Defendant articulates, and the evidence supports, two objective reasons for why Plaintiff overqualification was a negative trait: (1) he may have cost too much, and (2) he would have been unhappy in the position. (*See* dkts. 28 at 8; 31 at 9; 31-1 ¶ 5; 28-1; 29-3 at 28).

---

[5] *See Ins. Co. of N. Am.*, 49 F.3d at 1420 ("Although the ADEA does not prohibit rejection of overqualified job applicants *per se,* courts have expressed concern that such a practice can function as a proxy for age discrimination if 'overqualification' is not defined in terms of objective criteria."); *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 118 (2d Cir. 1991) ("The problem addressed in those cases is that a conclusory statement that a person is overqualified may easily serve as a mask for age discrimination.") (internal quotation marks omitted).

[6] *See Binder*, 933 F.2d at 192–93 ("[A] trier would be free to conclude that Kelleher was acting out of a genuine desire to avoid placing Binder in a job in which he might be frustrated, exhibit low morale and perform poorly."); *Bay*, 936 F.2d at 118 ("Dissatisfaction in a downgraded position is a legitimate reason for an employer to replace an employee with someone not distracted by such dissatisfaction."); *Stein v. Nat'l City Bank*, 942 F.2d 1062, 1065–66 (6th Cir. 1991) ("The goal of defendant's hiring policy is to reduce turnover by hiring those individuals most likely to remain employed for a prolonged period of time. The policy furthers this goal in two ways: by preventing the employment of individuals who will become bored quickly because of their level of qualification; and by not hiring those individuals who are capable of obtaining other, perhaps better paying, jobs shortly after employment."); *Ins. Co. of N. Am.*, 49 F.3d at 1420–21 ("Merkel explained that he feared that someone with Pugh's extensive background in the loss control field would delve too deeply into the accounts to which he would be assigned. He explained that if Pugh became too involved in uncomplicated risks, he would impose upon insureds' time to an inappropriate degree.").

Accordingly, Defendant has articulated a legitimate reason for its failure to hire Plaintiff for purposes of the *McDonnell Douglas* framework, and thus shifts the burden to Plaintiff to prove that those reasons were pretextual.

### iii. Pretext

At this stage, Plaintiff "must demonstrate that the employer's proffered reason was false, and that age discrimination was the real reason for the adverse employment action." *Ramos*, 603 F. App'x at 179 (citing *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 146-47 (2000)). Plaintiff puts forth several arguments for why Defendant's legitimate reasons were pretextual. Plaintiff argues that Defendant's overqualified justification is flawed because it is inconsistent to terminate him for lacking HVAC skills (*i.e.* he was underqualified), yet not hire him because he had too much experience (*i.e.* he was overqualified). Plaintiff also asserts that Suddith was unqualified for the job, thus casting doubt onto whether Defendant was evaluating the candidates based on their qualifications or on their age. Finally, Plaintiff argues that being overqualified is not a sufficient rationale for not hiring a skilled older worker.

None of these arguments are persuasive. It is perfectly consistent for Plaintiff to be evaluated negatively for the higher-skilled Mechanic II position because he lacked certain skills, while also being judged ineligible for the low-skilled Mechanic I position for having an excess of skills and experience. They are simply different positions with different hiring considerations.

Further, Plaintiff's argument that Suddith was not qualified is unsupported by the record. The position was low-skilled manual labor, often working under the direction of another. (Dkts. 28-5 ¶ 5, 28-19 at 19, 28-4 ¶ 16; 29-4 at 44). Suddith had experience working as a manual laborer in the related HVAC field, and had impressed McGarrahan with his character and personal skills. (Dkts. 29-5 at 29-30; 31-1 ¶¶ 2,3). There is no evidence on the record that

indicates these qualifications are insufficient under McGarrahan's understanding of the requirements for the job, or under the requirements articulated in the job description that a Mechanic I be "entry level," "semi-skilled," and have "some experience" in the trades of "plumbing, electrical, *HVAC*, painting, drywall repair, light carpentry, door & window repairs." (Dkt. 28-1 (emphasis added)).

Plaintiff also asserts that simply labeling someone as "overqualified" is not a legitimate reason to fail to hire them. As a general matter, the Court agrees. Overqualified is defined as "having more education, training or experience than a job calls for," which does not necessarily have a negative connotation. Webster's Collegiate Dictionary 830 (10th ed. 1994). Further, the case law addressing the topic of overqualification (see footnotes 5 and 6, *supra*) also points to the rule that an overqualification defense must have some objective criteria attached to it.

What Plaintiff misses with his argument, however, is that the record reflects that such objective criteria were present here. It is undisputed that Executive Director Fagan's understanding of the reason for failing to hire Plaintiff was that he would not have been happy in the lower level position because he was overqualified. This understanding is supported by other evidence on the record such as the facts that Plaintiff was formerly a Mechanic II, that Plaintiff would now need to be supervised by his former Mechanic II peers, and that Plaintiff's duties would include a significant amount of manual labor, even though he had dedicated decades of his life to obtain skills that went far beyond those of an unskilled laborer. The belief that an overqualified person would not be happy in a job is a legitimate reason not to hire them. *See Binder*, 933 F.2d at 192–93; *Bay*, 936 F.2d at 118. Such unhappiness might naturally lead to a poor attitude or early departure for a job that is a better fit, neither of which are desirable traits in an employee.

Evidence also demonstrates that Plaintiff's anticipated salary demands played a role in not hiring him. (See dkt. 31-1 ¶ 5). The record shows that McGarrahan sought to hire someone in the $10-12 per hour range, while Plaintiff's previous rate with Defendant had been $17.43. (*Id.*) The position was also advertised as having "[s]alary commensurate with experience." (Dkt. 28-1). The record shows that both McGarrahan and Fagan were aware of these considerations at the time of the hiring decision. (*Id.*; dkt. 28-4 ¶ 11). Even if Defendant could have hired Plaintiff at a $12 per hour rate, his past salary and experience suggest that he would have been unhappy with his compensation, again raising reasonable concerns that he was not an appropriate hire for the position. (*See* dkt. 31-1 ¶ 5).

Plaintiff essentially asks the Court to put itself in Defendant's position and make a determination that, based on the evidence, Defendant should have hired Plaintiff instead of Suddith. However, "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's [adverse employment action]." *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 722 (4th Cir. 2002). Each applicant had his own positive attributes. Plaintiff had greater mechanical skills and experience, while Suddith would likely require lower pay, was less likely to be unhappy in or leave the position, and came recommended by his potential boss, Keith Jackson. There is no evidence to show that Defendant's choosing Suddith for the reasons stated was pretext for age discrimination, rather than just unwise in Plaintiff's view.

Finally, even if Plaintiff were successful in showing pretext, he has not put forth sufficient evidence that his age was the "but-for" cause of the adverse action here. *See Gross*, 557 U.S. at 176. Plaintiff argues that Keith Jackson's comment that Defendant was seeking

someone younger for the position is sufficient evidence of the necessary causation to preclude summary judgment. The Court disagrees.

The evidence is uncontested that Jackson was not a decisionmaker for the failure to hire Plaintiff. (*See* dkt. 32-4 at 12-13). Further, Plaintiff had not even applied at the time of Jackson's statement. (Dkt. 29-5, at 352). Therefore, Jackson could not have been communicating his understanding of McGarrahan or Fagan's position on Plaintiff because those decisionmakers did not even know Plaintiff was considering applying at the time. Instead, the statement represented Jackson's opinion on the suitability of older workers for the entry level position. That a non-decisionmaker had the belief that entry level positions were not appropriate for older and experienced workers such as Plaintiff has no probative value as to whether the decisionmakers here failed to hire Plaintiff because of his age. Thus, Plaintiff has failed to meet the "high" but-for causation standard necessary for an ADEA claim. *Arthur*, 593 Fed. App'x at 219.

## IV. Conclusion

Even considering the evidence in the light most favorable to Plaintiff, no reasonable trier of fact faced with this evidence would find that Plaintiff's age was the but-for cause of his failure to be hired by Defendant. Plaintiff has failed to present sufficient evidence that would permit a reasonable jury to infer that Defendant's rationales for not hiring him were pretextual. Further, Plaintiff has failed to provide any probative evidence that his age was the but-for reason he was not hired. For these reasons, Defendant's motion for summary judgment will be **GRANTED** and Plaintiff's claim will be **DISMISSED**. An appropriate order will issue.

Entered this 15th day of June, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE